UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID FALTERMEIER, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| FCA US LLC, | ) ) |
| Defendant. | ) |

Case No. 4:15-cv-00491-DGK

## ORDER CLARIFYING DENIAL OF REMAND

This is a putative class action arising from alleged violations of the Missouri Merchandising Practices Act ("MMPA"). On June 2, 2015, Plaintiff David Faltermeier initiated this action in the Circuit Court of Jackson County, Missouri, against Defendant FCA US LLC ("FCA"). Plaintiff alleges that FCA's misrepresentations during a vehicle safety recall have caused Plaintiff and all other consumers who have purchased those vehicles in Missouri since June 4, 2013, an ascertainable financial loss.

On June 29, 2015, FCA removed the case to this Court, alleging jurisdiction based on the Class Action Fairness Act ("CAFA") and bankruptcy-related jurisdiction. The Court denied Plaintiff's motion to remand, finding that it had CAFA jurisdiction. In its analysis, however, the Court did not address Plaintiff's argument concerning the availability of alternative damages under the MMPA. The Court now clarifies its earlier order and confirms that it has subject matter jurisdiction.

**Factual Background**

Plaintiff maintains FCA has consistently and affirmatively misrepresented the design, safety, and performance of Model Year 2002-2007 Jeep Liberty and Model Year 1993-1998 Jeep

1

Grand Cherokee vehicles (collectively, "Jeep Vehicles") from June 4, 2013, to the present. Pet. ¶ 29. Plaintiff contends misrepresentations made during a safety recall have caused Plaintiff and all other consumers who have purchased Jeep Vehicles since June 4, 2013, an ascertainable financial loss. *Id.* ¶¶ 32-33. Specifically, Plaintiff contends he and other putative class members were deprived of the benefit of the bargain when they purchased Jeep Vehicles that were represented as safe and non-defective, but were actually worth less than represented due to a defective, rear-mounted fuel tank design. *Id.* ¶ 32.

Plaintiff filed this case in the Circuit Court of Jackson County, Missouri. The Petition sought compensatory damages for a violation of the MMPA, but did not request punitive damages. *Id.* at 15. The Petition also included two stipulations: (1) that Plaintiff would not request or accept an award of attorney's fees that would cause the amount in controversy to exceed $5 million; and (2) that Plaintiff's counsel would not request or accept an award of attorney's fees that would cause the aggregate award on the class claims to exceed $5 million. *Id.*

FCA timely removed to this Court, asserting (1) CAFA jurisdiction, 28 U.S.C. § 1332(d), and (2) federal bankruptcy-related jurisdiction, 28 U.S.C. § 1334(b). The Court denied Plaintiff's motion to remand, finding it had jurisdiction under CAFA.

## Standard

Federal courts are courts of limited jurisdiction and possess only the power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A state court action may be removed by the defendant to federal court if the case falls within the original jurisdiction of the district courts. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing federal subject matter jurisdiction. *Kokkonen*, 511 U.S.

at 377; *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). If federal subject matter jurisdiction is lacking, the district court must remand the case to state court. 28 U.S.C. § 1447(c).

Where removal is based on CAFA jurisdiction, the notice of removal must contain a statement alleging minimal diversity, that the proposed class contains at least 100 members, and that the amount in controversy exceeds $5 million, exclusive of interest and costs. *See id.* § 1332(d). While there is normally a presumption against federal court jurisdiction, *Kokkonen*, 511 U.S. at 377, the Supreme Court has recently observed that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

Where the jurisdictional amount is in dispute, both sides submit proof and the Court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied. *Id.* "Under the preponderance standard, the jurisdictional fact is not whether damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Bell*, 557 F.3d at 959 (internal quotation omitted). If "the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Id.* at 956.

This inquiry is fact intensive. *Id.* at 959. Defendants may introduce affidavits, declarations, or other documentation to satisfy the preponderance of the evidence standard. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) (cited with approval in *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)).

**Discussion**

The only element of CAFA jurisdiction Plaintiff contests is whether the $5 million amount in controversy is met. The amount in controversy here is determined by three factors: (1) the number of putative class members; (2) the amount of compensatory damages available for each vehicle; and (3) attorneys' fees.[1]

With respect to the number of putative class members, in its previous order the Court found that a fact finder might conclude that over 9,000 people bought at least 8,000 different vehicles in the state of Missouri within the class period. To clarify, the Court finds that the preponderance of the evidence establishes that the number of putative class members is equal to the number of Jeep Vehicles sold in Missouri: 8,127.[2]

The Court now turns to the question of the amount of the class members' damages. FCA asserts Plaintiff may seek "benefit of the bargain" damages that would amount to at least $5 million in the aggregate. Plaintiff contends this estimate is speculative and inflated.[3]

In deciding whether the amounts alleged satisfy the amount in controversy, "the court looks to state law to determine the nature and extent of the right to be enforced as well as the state measure of damages and the availability of special and punitive damages." *McGuire v. State Farm Fire & Cas. Co.*, 108 F. Supp. 3d 680, 684 (D. Minn. 2015). An amount is "not 'in controversy' if no fact finder could legally award it." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

---

[1] Although the MMPA provides for an award of punitive damages, Mo. Rev. Stat. § 407.025.1, Plaintiff did not seek them in his Petition. Therefore, the Court will not include them in calculating the amount in controversy. *See Hurst v. Nissan N. Am., Inc.*, 511 Fed. App'x 584, 586 (8th Cir. 2013) (noting that if punitive damages are not sought in the state court petition, such damages are legally unrecoverable under Missouri law).

[2] This is the number identified by Lawrence Brookes, Head of Product Analysis and Regulatory Processes for FCA, which the Court finds is the most credible evidence on the record.

[3] Plaintiff does not offer an alternate estimate of damages, but he is not required to offer an estimate because FCA bears the burden of establishing that the amount in controversy is more than $5 million.

The Court notes that compensatory damages on an MMPA claim can be measured by the benefit of the bargain rule, "which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 715 (Mo. Ct. App. 2009); *see also Torp v. Gen. Motors Acceptance Corp.*, No. 05-1042-CV-W-HFS, 2007 WL 2811437, at *6 n.9 (W.D. Mo. Sept. 24, 2007) ("Applied to a transaction involving the sale of an automobile, [the benefit of the bargain rule] allows the defrauded party to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented."). Here, FCA has established that Jeep Vehicles sold for between $2,900 and $12,986[4] and that the average sale price was approximately $6,638. Since the Petition alleges the Jeep Vehicles contain a "lethal" defect posing a "substantial risk of harm" to their occupants,[5] a jury could find the actual value of each Jeep Vehicles to be almost nothing. This means a jury could find each class members' compensatory damages to be $6,638, making the class members' aggregate damages almost $54 million,[6] more than ten times the jurisdictional threshold. Thus, FCA has carried its burden of establishing the jurisdictional amount.

Plaintiff argues the Court should use the cost of repair as the measure of compensatory damages. But even using this alternate measure of compensatory damages, the jurisdictional threshold would still be exceeded once attorneys' fees are included.

---

[4] *See* Def.'s Exhibits B-L (Docs. 16-2 to 16-12).

[5] *See* Pet. ¶¶ 2, 4 (describing the defect as one that "may result in fire and create a lethal hazard for vehicle occupants" and poses "a substantial risk of harm in ordinary operation").

[6] This calculation is the number of class members, 8,127, multiplied by the average damages $6,638, which is the difference between the average sales price ($6,638) and the actual value ($0). 8,127 multiplied by $6,638 equals $53,947,026.

Cost of repair damages are a valid alternative to diminution in value damages under the MMPA. *See Brown v. Bennett*, 136 S.W.3d 552, 557 (Mo. Ct. App. 2004) (awarding cost of repair damages to give the plaintiff the benefit of her bargain); *Morehouse v. Behlmann Pontiac-GMC Truck Serv., Inc.*, 31 S.W.3d 55, 61-62 (Mo. Ct. App. 2000) (finding evidence of repair costs sufficient to support an actual damages award under the MMPA). Plaintiff argues the cost of alternative repairs could be as little as $320 per vehicle.[7] Given the number of vehicles sold, 8,127, the total cost of these repairs would be $2,600,640.

As FCA points out, however, this amount does not account for costs associated with parts needed for installation and actual installation costs. The "skid plate" parts and labor required for installation would total $455 for the Jeep Liberty models and $430 for the subject Jeep Grand Cherokee models, bringing the costs of repair up to $3,605,010.[8] Since it is more likely than not that a jury would include the price of additional parts and labor needed for installation in determining cost of repair damages, the Court finds, by a preponderance of the evidence, that cost of repair damages awarded may total $3,605,010.

While this amount does not exceed the jurisdictional threshold, this is not the end of the analysis. The Court must also consider attorneys' fees. The MMPA states that a court may, in its discretion, "award to the prevailing party attorney's fees, based on the amount of time reasonably expended." Mo. Rev. Stat. § 407.025.1. Although Plaintiff and Plaintiff's counsel have both stipulated that they will not request or accept an award of attorney's fees that would cause the amount in controversy to exceed $5 million, this precertification stipulation cannot be used to defeat CAFA jurisdiction. In *Rolwing v. Nestle Holdings, Inc.*, the Eighth Circuit held

---

[7] Pl.'s Reply at 5 (Doc. 18).

[8] Brookes' Supp. Aff. ¶ 4. 4,416 Liberty vehicles x $455 = $2,009,280; 3,711 Grand Cherokee vehicles x $430 = $1,595,730; totaling $3,605,010.

6

that a plaintiff's stipulation not to accept an award of attorneys' fees that would exceed $4,999,999 precludes removal under CAFA's $5 million jurisdictional threshold. 666 F.3d 1069, 1072-73 (8th Cir. 2012). The Supreme Court subsequently held in *Standard Fire Insurance Company v. Knowles* that a plaintiff could not bind absent class members with a damages stipulation. 133 S.Ct. 1345, 1350 (2013). Although *Knowles* did not consider whether a stipulation limiting the amount of attorneys' fees could preclude removal under CAFA, in the wake of *Knowles* the Eighth Circuit held that "*Rolwing* was wrong," and remanded a case for calculation of the amount in controversy without regard to the damages and attorney's fee stipulations. *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 838-39 (8th Cir. 2013); *see also Goodner v. Clayton Homes, Inc.*, No. 4:12-CV-4001, 2014 WL 4722748, at *5 (W.D. Ark. Sept. 23, 2014) (finding that "statutory attorney fees are a benefit belonging to the putative class" and "a representative plaintiff's attorney would also be prohibited from limiting the recovery available to a class prior to class certification"). Consistent with these cases, the Court holds Plaintiff cannot use a stipulation limiting the amount of attorneys' fees to preclude CAFA jurisdiction. Thus, the Court must include in the jurisdictional amount the attorneys' fees that may be awarded.

In determining an amount of attorneys' fees that may be awarded, the court may consider attorneys' fees awarded in similar cases. *See Harris v. TransAmerica Life Ins. Co.*, No. 4:14-CV-186 CEJ, 2014 WL 1316245, at *1 (E.D. Mo. Apr. 2, 2014). FCA cites *Berry v. Volkswagen Group of America, Inc.*, in support. 397 S.W.3d 425 (Mo. 2013). In *Berry*, the plaintiff sued Volkswagen under the MMPA alleging that a class of cars contained window defects. *Id.* After five years of hard-fought litigation, the case settled with a total payout to class members of

$125,261. *Id.* After a three-day hearing on attorney's fees, the trial court awarded $6,174,640 in attorneys' fees. *Id.* at 428-29. The Supreme Court of Missouri upheld this award. *Id.* at 433.

The present case could generate a similar fee award. Given that the risk and complexity of prosecuting class actions such as this one justify higher fee awards; the quality of Plaintiff's counsel in this case and the commensurate higher hourly rates charged; and the expected length of the litigation (two years of discovery and motion work followed by a two-week trial); the Court finds it is more likely than not that the attorneys' fees awarded to Plaintiff in this case could be at least $1.4 million.[9]

Adding this amount to a compensatory damages award of $3,605,010, the Court finds that FCA has shown, by a preponderance of the evidence, that the total amount awarded may be more than $5 million. Consequently, the Court possesses CAFA jurisdiction to hear this case.

## Conclusion

The Court holds it possesses subject matter jurisdiction over this case. Plaintiff's Motion for Relief from Stay to File Motion for Reconsideration and for Leave to File Sur-Reply (Doc. 84) is DENIED. The stay imposed is lifted, and the May 10, 2016, discovery teleconference is rescheduled for June 1, 2016, at 10:00 a.m. No additional briefing for the discovery teleconference is required.

**IT IS SO ORDERED.**

Dated: May 26, 2016                 /s/ Greg Kays
                                                    GREG KAYS, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT

---

[9] The Court reiterates that, under the preponderance standard, the question is not whether an award of attorneys' fees will be greater than the requisite amount, but whether a court *might* legally conclude that they are. The Court's finding that such an amount is possible here does not signify that an attorneys' fees award in this amount is an acceptable, fair, or even likely amount.