UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DAVID FALTERMEIER, on behalf of himself and all others similarly situated,

    Plaintiff,

vs().

FCA US LLC,

    Defendant.

Case No. 4:15-cv-00491-DGK

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a putative class action arising from alleged violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020. Plaintiff David Faltermeier alleges that Defendant FCA US LLC ("FCA") made misrepresentations during a vehicle safety recall that have caused Plaintiff and all other consumers who have purchased the recalled vehicles since June 4, 2013, an ascertainable financial loss.

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 132). For the reasons set forth below, the motion is GRANTED, and Plaintiff's pending Motion to Certify Class (Doc. 134) is DENIED WITHOUT PREJUDICE.

**Standard**

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion, and it must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). If the movant does so, then the nonmovant must respond by submitting evidence

1

demonstrating that there is a genuine issue for trial. *Id.* A genuine issue regarding a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views any factual disputes in the light most favorable to the nonmoving party. *Torgerson*, 643 F.3d at 1042. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S 557, 585 (2009).

## Background[1]

In 2009, FCA purchased assets and liabilities, including those associated with vehicle safety recalls, from Chrysler LLC.[2] In August of 2010, the Office of Defects Investigation of the National Highway Traffic Safety Administration ("NHTSA") ordered a preliminary evaluation of alleged defects in Model Year 1993-1998 Jeep Grand Cherokee vehicles. In June of 2012, the NHTSA expanded its investigation to include both Model Year 1993-1998 Jeep Grand Cherokee vehicles and Model Year 2002-2007 Jeep Liberty vehicles (collectively, the "Jeep Vehicles").

The alleged defect at issue involves the vehicles' fuel tank design. The Jeep Vehicles are designed with fuel tanks mounted behind the rear axle of the car. Plaintiff avers the vehicles are designed without sufficient protection for a fuel tank in that area and that the Jeep Vehicles perform poorly in rear-impact collision fuel system integrity tests when compared to peer vehicles with fuel tanks located ahead of the rear axle.

---

[1] The parties contest which facts are relevant and what inferences from those facts are reasonable. The Court here states the facts in the light most favorable to Plaintiff as the non-moving party. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

[2] FCA asserts Plaintiff's claim is, in essence, a product liability claim, and that such claims are barred by the Bankruptcy Sale Order issued by the United States Bankruptcy Court for the Southern District of New York. *See In re Chrysler LLC*, No. 09-50002, at 21 ¶ EE (Bankr. S.D.N.Y. June 1, 2009), ECF No. 3232. The Court previously addressed this argument, finding that FCA expressly assumed Chrysler LLC's notification and remedy obligations pertaining to pre-existing defects, and FCA may be held liable for its own, independent misrepresentations of the vehicles (Doc. 52 at 11-12 (referring to Chrysler LLC by its post-June 2009 name, "Old Carco")).

2

In June of 2013, the NHTSA requested that FCA perform a safety recall of the Jeep Vehicles. On June 4, 2013, and June 18, 2013, FCA responded to the NHTSA's recall request by issuing two press releases (the "Press Releases") on their website. The June 4, 2013, press release stated the Jeep Vehicles were "safe and . . . not defective," and the June 18, 2013, press release reiterated that the vehicles were "not defective" (the "press release statements"). FCA ultimately agreed to perform this recall and offered to install a trailer hitch it believed would remedy any defect. Two years later, on July 2, 2015, the NHTSA held a public hearing to gather evidence regarding deficiencies in FCA's safety recall performance, and later entered into a consent order requiring FCA to perform a vehicle buyback campaign and pay a civil penalty.

In August of 2013—in the midst of the NHTSA and FCA recall efforts—Plaintiff David Faltermeier looked into purchasing a 2003 Jeep Liberty from a used car dealer, Cars Plus Credit. While on the Cars Plus Credit lot, Plaintiff asked a salesman four questions,[3] test drove the car, and purchased the vehicle for the negotiated price of $4,900.[4] At the time of purchase, Plaintiff's knowledge about his car stemmed from two sources: the Cars Plus Credit website and his discussions with the salesman. Plaintiff and the Cars Plus Credit salesman never discussed the vehicle's fuel tank, and the parties agree that the salesman did not make any misrepresentations about the Jeep. Def.'s Br. at vi ¶ 9 (Doc. 133); Pl.'s Opp. at vi (Doc. 148). Plaintiff did not see any of FCA's press release statements before buying his vehicle or in the process of buying his vehicle.

---

[3] Plaintiff inquired about: (1) the vehicle's condition; (2) the prior owner of the vehicle; (3) prior accidents involving the car; and (4) the asking price.

[4] Plaintiff testified that the Cars Plus Credit salesman "wanted $5,300 or $5,700" for the Jeep. Faltermeier 7/7/16 Depo. at 36:4-7. He negotiated the price down to $4,900 and paid for the car in cash. *Id.* at 34:8-12; 35:19-24.

3

In late 2013, Plaintiff became aware of the FCA recall efforts and FCA's press release statements after reading third-party news reports regarding the recall.[5] *See* Faltermeier Depo., Def.'s Ex. 1, at 57:1-21 (Doc. 133-1). Plaintiff has never visited FCA's website, where the Press Releases were disseminated, and testified he did not see the Press Releases until his attorneys provided him with a draft of the complaint filed in this matter. *Id.* at 191:7-199:3.

For purposes of this order, the Court assumes without deciding that the Jeep Vehicles were defective and FCA's press release statements were false.

## Discussion

FCA asserts summary judgment is proper for four reasons.[6] Because the Court finds that the press release statements were not made "in connection with the sale" of Plaintiff's Jeep Vehicle, it need not address FCA's other arguments.

To succeed on an MMPA claim, a plaintiff must prove five elements: (1) he leased or purchased a product or service sold or advertised by defendants for personal use; (2) he suffered an ascertainable loss of money or property; (3) the defendant committed an unfair or deceptive trade practice; (4) in connection with the sale; (5) which caused the plaintiff's loss. Mo. Rev. Stat. §§ 407.020, 025; *Wivell v. Wells Fargo Bank, N.A.*, No. 6:12-CV-3457-DGK, 2015 WL 7259836, at *3 (citing *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013)).

The Court focuses on the fourth prong, and asks whether FCA's statements were made in connection with the sale of Plaintiff's vehicle. *See* Mo. Rev. Stat. § 407.020.[7] The "in

---

[5] Plaintiff stated that he read news reports in November or December 2013 from the following sources: CBSNews.com; MSNBC.com; ABC News; and 60 Minutes. Faltermeier Depo. at 57:11-13.

[6] Specifically, FCA asserts summary judgment is proper because: (1) the statements at issue are not "misrepresentations" and are thus non-actionable under the MMPA; (2) Plaintiff did not see or hear any alleged misrepresentation "in connection with the sale or advertisement" of his Jeep; (3) Plaintiff did not suffer an "ascertainable loss"; and (4) Plaintiff did not suffer any loss "as a result of" FCA's conduct. FCA filed the instant motion before the Court ruled on its motion to dismiss (Doc. 66), and some of its arguments were mooted by the Court's order on that motion (Doc. 143). Because the Court finds FCA's second point to be dispositive, it need not address its other arguments.

connection with" requirement is somewhat amorphous, and Missouri courts have broadly construed the phrase "as used in the MMPA to mean 'to have a relationship.'" *Chamineak v. Jefferson Capital Sys., LLC*, No. 4:15-CV-419 (CEJ), 2015 WL 4207084, at *5 (E.D. Mo. July 10, 2015) (quoting *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014)). This relationship may exist even absent privity of contract between the plaintiff and defendant, so long as plaintiff can establish a link between the deception and the purchase. *See Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) (holding that indirect purchaser status alone does not bar consumers from bringing a claim under the MMPA).

Here, even construing the record in the light most favorable to Plaintiff, the Court has not found any facts that would lead a reasonable jury to conclude the press release statements were made "in connection with" the sale of Plaintiff's vehicle. No evidence indicates the representations were passed down the transaction chain—from FCA to the Cars Plus Credit salesman, and from the salesman to Plaintiff. *Cf. id.* (reversing trial court's dismissal of action against a wholesaler alleging the wholesaler withheld relevant facts from dealer, who in turn withheld the same relevant facts from the consumer). For example, there is no testimony or other evidence from which a factfinder could reasonably infer that the salesman's representations were colored by his direct or indirect knowledge of FCA's statements regarding the Jeep Vehicles' safety. It appears Plaintiff relies on the fact that the Press Releases were publicly-disseminated on FCA's website to satisfy the "in connection with" prong. But, there is no evidence that the Press Releases were sent to used and new car dealerships, wholesalers, or consumers,[8] or that the Cars Plus Credit dealership would have reviewed the Press Releases in

---

[7] *See also* Mo. Approved Jury Instr. (Civil) 39.01 (7th ed. 2014) ("Your verdict must be for plaintiff if you believe: . . . *in connection with* the [sale] of [the vehicle] defendant [misrepresented the vehicle] . . . .") (emphasis added).

[8] Plaintiff also specifically states he has never visited FCA's website.

5

the normal course of their business and passed that information on to their customers. In fact, the parties agree the Cars Plus Credit salesman did not make any false representations about the vehicle and, consequently, could not have falsely represented to Plaintiff that his vehicle was "safe" and "without defect" even with the rear-mounted fuel tank. The public dissemination of the Press Releases, standing alone, is insufficient to demonstrate the statements were made in connection with the sale of Plaintiff's Jeep.[9]

Indeed, the fatal flaw in Plaintiff's theory of liability is that FCA has no connection of any kind with the sale of Plaintiff's Jeep. The undisputed fact that the press release statements eventually reached Plaintiff *after* he purchased his Jeep does not provide the missing link identified above. Though an unlawful practice under the MMPA may occur at any time "before, during or *after* the sale, advertisement or solicitation," Mo. Rev. Stat. § 407.020.1 (emphasis added), post-sale unfair practices are actionable only in the context of "ongoing transactions," like loan procurement, servicing, and collection. *See Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 407-08 (Mo. 2014) (holding that third-party foreclosing entity may be held liable under the MMPA regardless of whether that entity was a party when the loan was first procured because collection of the loan is part of the loan's sale and, therefore, "in connection with" the loan); *Conway*, 438 S.W.3d at 416 ("Because a loan is an ongoing transaction, loan collection procedures, whether initiated by a loan originator or a loan servicer, are done 'in connection with' the original procurement of the loan."). Here, the sale of the Jeep was not an ongoing transaction—it was complete at the time Plaintiff handed over his money. Consequently, Plaintiff's later exposure to the press release statements cannot salvage his claim.

---

[9] The Court previously held Plaintiff's allegation that the Press Releases were publicly-disseminated was sufficient to survive Rule 12(b)(6) dismissal (Doc. 143 at 12). Now, with the benefit of the parties' evidentiary submissions, the Court finds Plaintiff's position is untenable.

## Conclusion

Without a relationship in fact between the press release statements and the sale of Plaintiff's vehicle, Plaintiff's MMPA claim fails as a matter of law. Accordingly, FCA's Motion for Summary Judgment (Doc. 132) is GRANTED.

Theoretically, dismissal of the only named plaintiff's claim is not fatal to this putative class action. But, the Court cannot rule on the pending class certification motion as briefed. Consequently, Plaintiff's pending Motion to Certify Class (Doc. 134) is DENIED WITHOUT PREJUDICE. Plaintiff may submit a renewed motion to certify class within 30 days of this order.

**IT IS SO ORDERED.**

Date: <u>March 24, 2017</u>　　　　　　　　　　　　　　　　<u>　/s/Greg Kays　　　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT